CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Russell Handy, Esq., SBN 195058
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Daniel Lopez**, <br><br> Plaintiff, <br><br> v. <br><br> **8015 Vineland, Inc.,** a California Corporation; **Superama, Inc.,** a California Corporation; and Does 1-10, <br><br> Defendants. | **Case No**. <br><br> **Complaint For Damages And Injunctive Relief For** Violations Of: American's With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Daniel Lopez complains of Defendants 8015 Vineland, Inc., a California Corporation; Superama, Inc., a California Corporation; and Does 1-10 ("Defendants") and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. He is a paraplegic who cannot walk and who uses a wheelchair for mobility.

2. Defendant 8015 Vineland, Inc. owned the property located at or about 8025 Vineland Ave, Sun Valley, California, in January 2015.

3. Defendant 8015 Vineland, Inc. owns the property located at or about

Complaint

8025 Vineland Ave, Sun Valley, California, currently.

4.  Defendant Superama, Inc. owned the Superama grocery store located at or about 8025 Vineland Ave, Sun Valley, California, in January 2015.

5.  Defendant Superama, Inc. owns the Superama grocery store ("Store") located at or about 8025 Vineland Ave, Sun Valley, California, currently.

6.  Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

7.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

8.  Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

9.  Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

Complaint

**FACTUAL ALLEGATIONS:**

10. The Plaintiff went to the Store in January 2015 to shop.

11. The Store is a facility open to the public, a place of public accommodation, and a business establishment.

12. Point-of-sale machines are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Store.

13. Unfortunately, none of the point-of-sale machines at the checkout counters were accessible to plaintiff on the day of his visit in January 2015. In fact, with the exception of check-stand 5, all of the point-of-sale machines are located about 45 inches above the finish floor. The highest operable parts of those point-of-sale machines are about 53 inches in height. None of these are accessible to plaintiff.

14. Meanwhile, check-stand 5 has a lowered point-of-sale machine, but this check-stand is not available for use by customers because defendants routinely and regularly keep this check-stand closed and barricaded with beverage coolers and shopping carts, so that customers cannot use the check stand.

15. Because defendants keep check-stand 5 closed, plaintiff is forced to use the other check-stands, which have point-of-sale machines that are not accessible to him.

16. The defendants do not have a policy in place to make sure that the accessible check-stand (check-stand 5) is kept open and free from barriers.

17. The plaintiff personally encountered these problems.

18. This inaccessible condition denied the plaintiff full and equal access and caused him difficulty and frustration.

19. Meanwhile, and even though plaintiff did not personally confront the barriers, the parking lot has several parking spaces that are not accessible to persons in wheelchairs.

3

Complaint

20. Two of the parking spaces marked and reserved for persons with disabilities have access aisles that do not comply with the law. They are triangular and they do not comply with the width requirements of the Americans with Disability Act Accessibility Guidelines.

21. Some of the parking spaces marked and reserved for persons with disabilities also lack the required signage necessary to make them compliant with the law.

22. Some of the access aisles lack the "NO PARKING" warning.

23. Produce scales are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Store.

24. Unfortunately, the scales in the produce department do not comply with the height-reach requirements of the Americans with Disability Act Accessibility Guidelines. Each of the produce scales are located more than 54 inches above the finish floor, making them inaccessible to persons in wheelchairs.

25. Plaintiff would like to return to and patronize the Store but will be deterred from visiting until the defendants cure the violations.

26. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

27. The violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

28. Plaintiff is and has been deterred from returning and patronizing the Store because of his knowledge of the illegal barriers that exist. Plaintiff will,

Complaint

1    nonetheless, return to assess ongoing compliance with the ADA and will
2    return to patronize the Store as a customer once the barriers are removed.

3    29. Given the obvious and blatant violation, the plaintiff alleges, on
4    information and belief, that there are other violations and barriers on the site
5    that relate to his disability. Plaintiff will amend the complaint, to provide
6    proper notice regarding the scope of this lawsuit, once he conducts a site
7    inspection. However, please be on notice that the plaintiff seeks to have all
8    barriers related to his disability remedied. See *Doran v. 7-11*, 524 F.3d 1034
9    (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site,
10   he can sue to have all barriers that relate to his disability removed regardless
11   of whether he personally encountered them).

12   30. Additionally, on information and belief, the plaintiff alleges that the
13   failure to remove these barriers was intentional because: (1) these particular
14   barriers are intuitive and obvious; (2) the defendants exercised control and
15   dominion over the conditions at this location and, therefore, the lack of
16   accessible facilities was not an "accident" because had the defendants
17   intended any other configuration, they had the means and ability to make the
18   change.

19

20   **I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS**
21   **WITH DISABILITIES ACT OF 1990** (On behalf of plaintiffs and against all
22   defendants (42 U.S.C. section 12101, et seq.)

23   31. Plaintiff repleads and incorporates by reference, as if fully set forth
24   again herein, the allegations contained in all prior paragraphs of this
25   complaint.

26   32. Under the ADA, it is an act of discrimination to fail to ensure that the
27   privileges, advantages, accommodations, facilities, goods and services of any
28   place of public accommodation is offered on a full and equal basis by anyone

5

Complaint

who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

    b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

    c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

33. Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. One in every eight of those accessible parking spaces but not less than one must be a "van" accessible parking space, *i.e.*, having an eight foot access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, one in every six accessible parking spaces must be van accessible. 2010 Standards § 208.2.4.

34. Here, several of the parking spaces are not compliant with the law. Access aisles are not at least 60 inches in width.

Complaint

35. Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. To qualify as a reserved handicap parking space, the space must be properly marked and designated. Under the ADA, the method, color of marking, and length of the parking space are to be addressed by State or local laws or regulations. See 36 C.F.R., Part 1191, § 502.3.3. Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each parking space must be at least 216 inches in length. CBC § 11B-502.2 Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each such space must be identified with a reflectorized sign permanently posted adjacent to and visible from each stall or space. CBC § 1129B.4. The sign must consist of the International Symbol of Accessibility (♿) in white on a blue background. *Id.* It cannot be smaller than 70 square inches and must be mounted so that there is a minimum of 80 inches from the bottom of the sign to the parking space. *Id.* Signs must be posted so that they cannot be obscured by a vehicle parking in the space. *Id.* An additional sign or additional language below the symbol of accessibility must state, "Minimum Fine $250" to ensure that the space remains available for persons with disabilities. *Id.* Another sign must be posted in a conspicuous place at the entrance to the parking lot or immediately adjacent to each handicap parking space, with lettering 1 inch in height, that clearly and conspicuously warn that unauthorized vehicles parking in the handicap parking spaces can be towed at the owner's expense. *Id.* Additionally, the surface of the handicap parking stall must have a profile view of a wheelchair occupant (♿) that is 36 inches by 36 inches. *Id.* And the surface of the access aisle must have a blue border. CBC § 1129B.3. The words "NO PARKING" in letters at least a foot high must be painted on the access aisle. *Id.*

7

Complaint

36. Here, some of the parking spaces lack the proper signage. Some of the parking spaces have access aisles that lack the "NO PARKING" lettering, and the parking simply failed to comply.

37. In stores and other retail outlets with check stands, the point-of-sale machines must be made accessible. Title 24 of the California Code of Regulations (aka "California Building Code") §11B-707 (formerly § 1117B). To be accessible, the screen must be positioned so that it is readily visible to and usable by a person sitting in a wheelchair.  Where the screen is horizontal (angled from 30–60 degrees away from the viewer), the centerline of the display screen must be located no greater than 44 inches above the floor. CBC §11B-707.7.1.3 (formerly § 1117B.7.5.3).

38. Here, the only point-of-sale machine, at check-stand 5, that complies with the height requirements is obstructed and unavailable for use by persons in wheelchairs. The other machines do not comply with the height requirements.

39. If controls, dispensers, receptacles or other equipment is provided, they must be on an accessible route and be mounted so that their highest operable parts are no greater than 54 inches above the floor. 1991 Standards § 4.22.7; 4.27.

40. Here, the failure to ensure that the produce scales met the height requirement is a violation of the ADA.

41. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

42. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the ADA.

43. Given its location and options, plaintiff will continue to desire to patronize the Store but he has been and will continue to be discriminated

Complaint

against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

44. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

45. Because the defendants violated the plaintiff's rights under the ADA, they also violated the Unruh Civil Rights Act and are liable for damages. (Cal. Civ. Code § 51(f), 52(a).)

46. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Cal. Civ. Code § 55.56(a)-(c).)

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act and/or the California Disabled Persons Act, which provides for actual damages and a statutory minimum of $4,000.

Complaint

1     3. Reasonable attorney fees, litigation expenses and costs of suit,

2 pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

3

4 Dated: January 24, 2017         CENTER FOR DISABILITY ACCESS

5

6                              By:_____

7                              Russell Handy, Esq.
                              Attorneys for plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint